## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HERTZ INVESTMENT GROUP, LLC.** | * | **CIVIL ACTION NO.:** |
| **HERTZ LAKE CHARLES ONE, LLC** | * | |
| | * | |
| *Plaintiffs* | * | **SECTION:** |
| | * | |
| **VERSUS** | * | **JUDGE:** |
| | * | |
| **THE CITY OF LAKE CHARLES,** | * | |
| | * | |
| | * | |
| *Defendants* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT, ATTORNEY'S FEES, AND/OR DAMAGES

Petitioners Hertz Investment Group, LLC and Hertz Lake Charles One, LLC submit this Complaint for Declaratory Judgment, and aver the following in support:

### The Parties

1.

Plaintiff **HERTZ INVESTMENT GROUP, LLC** ("HIG") is a California limited liability company authorized to do business in Louisiana.

2.

Plaintiff **HERTZ LAKE CHARLES ONE, LLC** ("HLCO," and collectively with HIG, "Hertz") is a Delaware limited liability company authorized to do business in Louisiana.

3.

Defendant **THE CITY OF LAKE CHARLES** (the "City") is a Louisiana political subdivision located in the Parish of Calcasieu, State of Louisiana.

**Venue And Jurisdiction**

4.

This lawsuit arises under the United States Constitution and 42 U.S.C.A. § 1983; accordingly, this Court has jurisdiction under 28 U.S.C. § 1331.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).  The City is a political subdivision amendable to suit and is a citizen of Calcasieu Parish, Louisiana.  *Moor v. Alameda Cnty.*, 411 U.S. 693 (1973). Therefore, venue is proper pursuant to 28 U.S.C. § 1391.

**Factual Background**

5.

Plaintiffs seek a Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and 42 U.S.C.A. § 1983 that the Lake Charles City Code (the "City Code") Sections 6-344, enacted by Ordinance No. 19006, and 12.5-9(d)(8)&(e), enacted by Ordinances No. 19005, as well as Ordinance No. 19249 are invalid either facially or as applied because they are unconstitutional and because they conflict with state law. *See* Ex. 1, Ordinance No. 19006; Ex. 2, Ordinance No. 19005; Ex. 3, Ordinance No. 19249.

6.

HLCO is the owner of the Capital One Tower, a 22-story office building located at 1 Lakeshore Drive, Lake Charles, Louisiana.

7.

Property damage to the Capital One Tower is covered by a certain Zurich EDGE Policy No. ERP0280044-03 with a policy period from May 31, 2020 to May 31, 2021 (the "Policy") issued by American Guaranty and Liability Insurance Company ("AGLIC").  HIG is the named insured under the Policy, and HLCO is an additional insured under the Policy.

8.

The Capital One Tower sustained significant and extensive physical damage as a result of Hurricane Laura and Hurricane Delta.  As a result, Hertz has suffered, and continues to suffer, substantial business losses as a result of the hurricanes, including loss of rent.

9.

Current estimates place the cost to repair the Capital One Tower at over $166 million. However, to date, AGLIC has paid less than $60 million.

10.

On October 20, 2021, the City Council passed Ordinance No. 19005 to revise Section 12.5-9 of the City Code by adding provisions that (1) deeming commercial property "blighted" if it is "boarded" for more than 12 months, and (2) imposing new fines on such property and its owner "[i]n addition to any other remedies available under [the City] Code or the law."  The new provisions of Section 12.5-9 provide:

> [(d)](8) No residential structure boarded shall remain in that state for a period longer than a total of 24 months all inclusive.  No commercial structure boarded shall remain in that state for a period longer than a total of 12 months all inclusive. If the property is secured in this manner for greater than the applicable time period, then the property shall be deemed blighted.

> (e) In addition to any other remedies available under this Code or the law, any violation of this section shall be subject to, upon a finding of liability by the city's administrative adjudication hearing officer pursuant to R.S. 13:2575 and this Code, a civil penalty not to exceed $250.00 for a first offense, $500.00 for a second offense which occurs within 12 months of the first offense, or $1,000.00 for a third or subsequent offense which occurs within 12 months of the first offense.  The imposition of a civil penalty does not relieve a person of the duty to abate the violation.

11.

On that same day, October 20, 2021, the City Council passed Ordinance No. 19006 to enact Section 6-344 of the City Code, which purports to grant to the City a "privilege" over insurance

3

proceeds to secure costs incurred by the City for demolition of property.  Section 6-344 provides as follows:

Sec. 6-344. - Liens for abatement costs and other remedies.

(a) The privilege in favor of the City of Lake Charles for the costs of demolition of condemned, abandoned, and/or blighted property shall also arise and be effective against the immovable property, including improvements, and as to the net amount payable under the terms and conditions of any contract of insurance issued by an insurer providing indemnity coverage or other compensation to the named insured for damage to the property as of the date of the recordation of the notice as provided herein. The term "net amount payable" shall include sums payable to the named insured out of any recovery collected, or to be collected, from the insurer whether by judgment, settlement, or compromise.

(b)The privilege discussed in subsection (a) shall become effective if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of damages to the condemned, abandoned, and/or blighted property, written notice is delivered to the insured and to the insurer and to any other insurance company obligated by contract to pay indemnity or compensation to the insured for damages to the property, which notice shall contain the name and address of the insured and shall advise as to the nature and pendency of the condemnation, abandonment, and/or blight proceeding.

(c) Delivery of the notice required by subsection (b) shall be by any of the following methods:

(1) By certified mail, return receipt requested, at the last known address of the insured, the insurer, and of any other insurance company obligated by contract to pay indemnity or compensation to the insured for damages to the property;

(2) By facsimile transmission with proof of receipt of transmission by the City; or

(3) By electronic mail with proof of receipt of transmission by the city.

This privilege shall be effective against all persons given notice according to the provisions of this section. This privilege shall not be defeated nor rendered ineffective as to any person that has been given the required notice because of failure to give the notice to all those persons named in this subsection.

(d) If delivery of the notice required herein is made by facsimile transmission or by electronic mail, and the sender fails to obtain a signed proof or receipt within seven days, then delivery shall be made by certified mail, return receipt requested, and costs of mailing shall be taxed as court costs.

(e)The city's privilege and lien as to the immovable property shall be preserved by the filing and recording of an affidavit signed by the mayor of the City of Lake Charles, or his designee, in the Calcasieu Parish mortgage records. The affidavit shall include a description of the property sufficient to reasonably identify the immovable and a statement of facts listing the approximate cost or costs incurred or reasonably expected to be incurred by the city for the costs of demolition.

(f) The City of Lake Charles is authorized to recover interest on the amounts secured by the lien. The interest shall not exceed the rate of legal interest provided in R.S. 9:3500 and shall be computed from the date of recordation of the lien until paid.

(g) The city's privilege and lien shall prime all other liens or privileges against the property filed after the notice to the owner and insurer(s) are filed with the recorder of mortgages pursuant to this section, regardless of the date on which the lien and privilege is perfected, except that the lien and privilege will not prime other tax liens against the property.

(h) If any part of this section or application of the same to any natural or juridical person or set of circumstances is for any reason held to be unconstitutional, invalid, or unenforceable, then such invalidity shall not affect any other provision or application of this section or chapter which can be given effect without the invalid provision or application.

12.

Upon information and belief, the new provisions of Ordinance Nos. 19005 and 19006 were created as a way for the City to obtain the insurance proceeds owed to Hertz under the Policy to repair the damages its building suffered.

13.

In fact, on October 22, 2021—two days after the City passed Ordinance Nos. 19005 and 19006—the City notified Hertz of hearing before an Administrative Hearing Officer on November 18, 2021 "to discuss the status of the property [the Capital One Tower]."  Hertz attended the hearing, as instructed, but no order or judgment was rendered by the Administrative Hearing Officer.

14.

Rather than proceed through the appropriate procedural avenues (i.e., a proceeding before an Administrative Hearing Officer), the City decided to take matters into its own hands.  On May 26, 2022, the City Council issued a notice informing HLCO that the City Council intended to declare the Capital One Tower "in a blighted and abandoned condition" at a City Council hearing scheduled for June 15, 2022.  At the hearing, the City Council passed Ordinance No. 19249 to declare the Capital One Tower blighted property, and specifically identified HLCO by name.  *See* Ex. 3, Ordinance No. 19249.

15.

Hertz fully intends to rebuild the Capital One Tower as soon as possible.  In fact, Hertz has already entered into publicly recorded agreements with a general contractor and an architect to commence repairs on the Capital One Tower that are awaiting permits from the City.

16.

Notwithstanding the fact that Hertz has already started the process for rebuilding the Capital One Tower, the City is currently seeking to impermissibly enforce a lien over Hertz's property, as well as a lien over any future insurance proceeds, by way of the above-cited ordinances.  Additionally, while Ordinance No. 19249 does not assess any fines, Hertz suspects that the City will use its blight finding to impose fines pursuant to the new provisions enacted by Ordinance No. 19005 without submitting the issue to an Administrative Hearing Officer.

17.

In any event, the City has not commenced any proceeding to condemn the Capital One Tower, has not issued any finding or decision to demolish the Capital One Tower, and has not incurred any costs associated with any (non-existent) demolition.

18.

Additionally, the City has failed to satisfy the basic requirements for obtaining a demolition lien.  Before a privilege or lien for demolition costs can be preserved or enforced, "the owner [must] refuse[], after notification by the [City] and reasonable opportunity to be heard, to pay the costs incurred by the [City]."  LA. REV. STAT. § 33:4766(C).  Additionally, upon information and belief, the City has not filed in the mortgage records an affidavit signed by the City's mayor containing a statement of facts listing the approximate cost or costs incurred by the City for demolition (as required by Louisiana law)—*because no such demolition costs exist. See* LA. REV. STAT. § 33:4766(D).

19.

Put succinctly, the City's Ordinances were passed to manufacture a finding of "blight" to create a purported "lien" or "privilege" encumbering millions of dollars of Hertz's insurance proceeds for hypothetical and unproven demolition costs that have not been incurred, without the requisite notice and hearings mandated by the U.S. Constitution and Louisiana law.  These Ordinances, and the City's application of them, should be declared unconstitutional and invalid.

**Count 1: Section 6-344 Is Unconstitutional and Invalid Because Deprives Hertz of Its Interest in Insurance Proceeds Without Due Process**

20.

Section 6-344 is invalid—either facially or as applied—because it conflicts with constitutional and Louisiana law by creating a privilege over hypothetical demolition costs before Hertz has any obligation to demolish its property.

21.

A "privilege is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages." LA. CIV. CODE art.

3186.  Under Louisiana law, a "'privilege' is a nonconsensual device that arises as a matter of law." *In re Green*, 793 F.3d 463, 469 (5th Cir. 2015). "The term 'statutory lien' means lien arising solely by force of a statute on ***specified circumstances or conditions*** . . . ." *Id.*  (emphasis added). "Laws that provide for the coming into existence of liens and privileges are strictly construed, and where it is provided that they may arise only after the performance of certain definite acts by a governing authority, strict adherence to such requirements is mandatory as a condition precedent thereto." *City of Alexandria v. Shevnin*, 126 So.2d 336 (La. 1961).

22.

The "specific circumstances" giving rise to the privilege have not yet occurred because Hertz has not received the requisite notice.  *See* La. Civ. Code art. 3277 (providing that privileges become extinct "[b]y the extinction of the thing subject to the privilege" and "[b]y the extinction of debt which gave birth to it").  Section 6-344 allows for a lien to arise on insurance proceeds to secure costs of ***demolition***.   But, before it can demolish a building (or seek costs therefor), a municipality must give the owner sufficient notice and a hearing to satisfy governmental responsibility to accord due process of law.  *Housemaster Corp. v. City of Kenner*, 374 So. 2d 1240, 1242-43 (La. 1979) (citing U.S. Const. Amend. 14).  Louisiana Revised Statutes § 33:4762 provides that, before the governing authority may condemn any building or structure, the mayor or chief executive shall serve notice "[o]n the owner of the building or structure requiring him to show cause at a meeting of the governing authority regular or special, why the building or structure should not be condemned." *Id.* (citing La. Rev. Stat. § 33:4762).  It is "axiomatic that statutes providing for these procedural protections and substantive restraints must be strictly construed, ***particularly the requirement that the proper owner be notified of the hearing***." *Id.* (emphasis added).

23.

Here, there was no notice, adjudicatory hearing, or finding of condemnation required to impose on Hertz any obligation to demolish its property.  And the City has not demonstrated that the Hertz's property should be demolished.

24.

Thus, judgment should be rendered declaring Section 6-334 and Ordinance No. 19006 invalid and unconstitutional, on their face and as applied, because they create a governmental privilege encumbering insurance proceeds to which Hertz is entitled without appropriate due process.

## Count 2: Section 6-344 Is Invalid Because The City Council Lacks Authority To Grant a Privilege on Insurance Proceeds

25.

A city ordinance cannot conflict with Louisiana law or the Constitution.  *See Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 304–305 (5th Cir. 2005).  Louisiana law provides that a "privilege can be claimed only for those debts to which it is expressly granted" in the Code or *by law*."  LA. CIV. CODE art. 3186.  "[A] privilege arises only if and to the extent the law says it does; the law must be express."  *In re Green*, 793 F.3d 463, 469 (5th Cir. 2015).

26.

Louisiana statutes provide that municipalities are granted liens against property only when certain conditions are met—which are not present here.  LA. REV. STAT. §§ 33:4754; 33:4766.  No authority exists for granting a municipality a lien on insurance proceeds, especially without satisfying based due process requirements.  The ordinances are therefore invalid, and should be judicially declared as such, because they conflict with the express provisions of Louisiana statutes. *See Energy Mgmt.*, 397 F.3d at 304–305.

## Count 3: The City's Ordinances Are Invalid Because They Fail To Comply With Louisiana Revised Statutes § 13:2575

27.

The City cannot impose fines for blighted property unless it complies with Louisiana Revised Statutes § 13:2575. LA. REV. STAT. § 13:2575(A)(1).

28.

*First*, the City must comply with Section 13:2575's procedures for administrative adjudication, which requires an administrative hearing before the imposition of fines. Section 13:2575(B)(1) requires (among other things) the appointment of one or more hearing officers who may be (1) the City's director of health or his designee, (2) the health officer of Calcasieu Parish or his designee, or (3) a person who has been licensed to practice law in Louisiana for two years.

29.

The City never appointed a hearing officer (or officers) to determine whether Capital One Tower was, in fact, blighted. Instead, the City Council unilaterally enacted legislation deeming the Capital One Tower a "blight" as a matter of municipal law. In doing so, the City deprived Hertz of the opportunity to have the City's "blight" charges heard and determined by a neutral arbiter, as required for due process. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 ("It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process." (quotes and brackets omitted)).

30.

*Second*, and as part of the administrative adjudication procedures, the City must provide adequate notice. Specifically, "prior to holding an administrative hearing for the determination of blight," the City must provide notice of the hearing to the property owner and each mortgagee of

record "at least ***thirty days*** in advance of the date of the administrative hearing."  LA. REV. STAT.

§ 13:2575(B)(1)&(D)(2) (emphasis added).

31.

The City failed to give Hertz 30 days' notice before holding the "public hearing" at which

the City Council issued Ordinance No. 19249.  The City notified Hertz of the June 15, 2022 "public

hearing" via letter dated May 26, 2022—thus giving Hertz only 20 days' notice.  To be clear, the

"public hearing" cannot be legally considered an administrative adjudication under Section

13:2575.  But even if it could (which it cannot), the City Council still failed to give Hertz notice

as required by Section 13:2575(B)(1).

32.

*Third*, the subject property must satisfy the definition of "blighted property" under Section

13:2575(A)(2); i.e.:

> "Blighted property" means commercial or residential premises, including lots,
> which are vacant, uninhabitable, and hazardous and because of their physical
> condition, are considered hazardous to persons or property, or have been declared
> or certified blighted, **and have been declared to be a public nuisance by a court
> of competent jurisdiction or by an administrative hearing officer** acting
> pursuant to competent jurisdiction or by an administrative hearing officer **acting
> pursuant to R.S. 13:2575 et seq., or any other applicable law**.

*Compare* LA. REV. STAT. § 13:2575(A)(2), *with* LA. REV. STAT. § 33:1374(B)(1).  Thus, property

is not considered "blighted" unless two elements are met: (1) the property is vacant, uninhabitable,

and hazardous to persons or property, or, alternatively, declared or certified blighted; and (2) the

property has "been declared to be a public nuisance by a court of competent jurisdiction or by

an administrative hearing officer . . . acting pursuant to [Section 13:2575]."  *Id.*

33.

The City Council's finding of "blight" fails to comply with Section 13:2575 both

procedurally *and* substantively.  Before a municipality can impose fines for blighted property,

11

Section 13:2575(A)(2) requires a declaration "by a court . . . or an administrative hearing officer" that the property is a "public nuisance." The City Council did not let a court or an administrative hearing officer determine that issue; the City Council simply made that decision for itself in an ordinance.

34.

Moreover, the City Council did not analyze whether Capital One Tower's condition was, in fact, a public nuisance. Instead, the City Council merely relied upon its own (invalid) ordinance—Ordinance No. 19005—declaring that all commercial buildings boarded for 12 months are "blighted" *ipso facto*, regardless of the facts or circumstances. This ordinance is facially suspicious, as the City Code only applies a presumption of "blight" in extreme circumstances in which there are numerous instances of morally deplorable crimes—such as drug-related crimes, "high violent crime[s]," and prostitution—or significant disturbances to people of normal sensitivities. City Code §§ 12.5-2.1 & § 12.5-1. In any event, the City Council's "declaration" is legally invalid—and cannot serve as the basis for fines or any lien arising therefrom—without the findings required of an administrative hearing officer (not the City Council) by Section 13:2575.

35.

Thus, Hertz respectfully requests a judgment declaring Ordinance No. 19249 invalid because it fails to comply with Louisiana Revised Statutes § 13:2575.

### Count 4: The City's Ordinances Are Unconstitutional *Ex Post Facto* Laws

36.

The *ex post facto* clauses of the U.S. Constitution create "a limitation upon the powers of the Legislature" that is "is directed at the retroactivity of penal legislation." *Rogers v. Tenn.*, 532

U.S. 451, 456 (2001) (quoting *Marks v. U.S.*, 430 U.S. 188, 191 (1977)); *E. Enters. v. Apfel*, 524 U.S. 498, 533 (1998).  Specifically, the *ex post facto* clauses of the constitution prohibit federal and state governments from enacting laws that criminally punish conduct that was lawful when it was done.  *See Fletcher v. Peck*, 10 U.S. 87, 138 (1810); *Calder v. Bull*, 3 U.S. 386 (1798).  The purpose of the *ex post facto* prohibition is "to assure that legislative Acts give fair warning to their effect and permit individuals to rely on their meaning until explicitly changed."  *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981).

37.

The *ex post facto* clauses apply to laws that impose "any punishment" for past conduct, "including a monetary payment or a fine" that serves a retributive or deterrent purpose.  *Gov't of Virgin Islands v. D.W.*, 3 F.3d 697, 700-01 (3d Cir. 1993) (quoting *Sheppard v. State of La. Bd. of Parole*, 873 F.2d 761, 764 (5th Cir. 1989)) (brackets omitted); *see also Austin v. U.S.*, 509 U.S. 602, 621-22 (1993).  As the U.S. Supreme Court explained in *Fletcher v. Peck*:

> An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed.  Such a law may inflict penalties on the person, or may inflict pecuniary penalties which swell the public treasury.  The legislature is then prohibited from passing a law by which a man's estate, or any part of it, shall be seized for a crime which was not declared, by some previous law, to render him liable to that punishment.

10 U.S. 87, 138 (1810).

38.

Ordinance No. 19005, enacted on October 21, 2021, automatically deems commercial property a "blight" if it is boarded for more than 12 months.[1]  Using Ordinance Nos. 19005 and

---

[1] This provision actually violates Louisiana law, which provides that property is not considered "blighted" unless, among other things, the property is "declared to be a public nuisance by a court of competent jurisdiction or by an administrative hearing officer."  *See* LA. REV. STAT. §§ 13:2575(A)(2) & 33:1374(B)(1).  It also bears noting that property is only presumed to be a "public

13

19249, the City Council has unilaterally deemed Hertz's building a "blight" that can give rise to fines and other punitive measures *less than 12 months from the City Council's enactment of Ordinance No. 19005*. Thus, Ordinance No. 19005 (and the City Council's premature invocation thereof) punishes Hertz for conduct that occurred prior to Ordinance No. 19005's enactment, rendering it an *ex post facto* law.

39.

The *ex post facto* clauses also forbid governments from enacting laws which "impose[] additional punishment to that then prescribed" at the time the conduct occurred.  *Weaver v. Graham*, 450 U.S. 24, 28 (1981).  Thus, even if conduct was legally punishable when it occurred, a subsequent law applied to such conduct is still *ex post facto* if its punishment is "more onerous than the prior [then-existing] law."  *Dobbert v. Fla.*, 432 U.S. 282, 294 (1977).

40.

Here, Ordinance No. 19005 creates substantial fines of as much as $1,000 per day on owners whose commercial property remained boarded for longer than 12 months "all inclusive." These new fines are imposed "[i]n addition to any other remedies available under [the City] Code or the law."  Thus, as applied by the City Council, Ordinance No. 19005 punishes Hertz with penalties that are "more onerous" than the law that existed at the anniversary of the building's windows being boarded.  These new, exorbitant fines cannot be imposed based on the building's condition prior to Ordinance No. 19005's enactment (at least not until Ordinance No. 19005 has been in place for at least 12 months).  Thus, Ordinance No. 19005—or, at least, the City Council's application of it through Ordinance No. 19249—violates the *ex post facto* clauses.

---

nuisance" if there are multiple acts of drug-related crimes, high violent crimes, prostitution, or disturbances. City Code § 12.5-2.1.

14

41.

Thus, Hertz respectfully requests a judgment declaring the City's Ordinances invalid and unconstitutional because they violate the U.S. Constitution's prohibition against *ex post facto* laws.

<u>**Count 5: The City's Ordinances**</u>
<u>**Are Unconstitutional Bills of Attainder**</u>

42.

"[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." *U.S. v. Lovett*, 328 U.S. 303, 315 (1946); *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (2002) (explaining that a bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial").   Under this constitutional prohibition, individuals and corporations "may not be singled out for punishment" by any form of legislation.  *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 349 (2d Cir. 2002); *see also Kapersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 453-54 (D.C. Cir. 2018); *SBC Commc'ns, Inc. v. F.C.C.*, 154 F.3d 226, 234 n.11 (5th Cir. 1998).   Legislation constitutes a bill of attainder, and thus violates the U.S. Constitution, when (1) it "determines guilt and inflicts punishment," (2) "upon an identifiable individual," and (3) "without provision of the protections of a judicial trial." *Nixon*, 433 U.S. at 468.

43.

The City Council legislatively enacted a series of ordinances that, when applied together, constitute a bill of attainder.  First, the City Council enacted Ordinance No. 19005 to require an automatic finding of blight when a commercial structure is boarded for longer than 12 months "all inclusive."  Ordinance No. 19005's new codal provisions created two substantial changes in the

law: (1) they automatically deems commercial property "blighted" if it is boarded for 12 months—regardless of whether an administrative adjudication hearing officer considers it a nuisance—and (2) they create new, substantial fines "[i]n addition to any other remedies available under [the City] Code or the law" that *must* be imposed "upon a finding of liability by the city's administrative adjudicative hearing officer."

44.

While Ordinance No. 19005 provides for at least *some* (albeit insufficient) judicial protection by requiring "a finding of liability by the city's administrative adjudicative hearing officer," the City Council stripped Hertz of that protection when it enacted Ordinance No. 19249, which *specifically* declares Hertz's property—and only Hertz's property—to be blighted without a trial before an administrative adjudicative hearing officer.  In doing so, Ordinance No. 19249 automatically "determines guilt" and, thus, "inflicts punishment" by effectively mandating the fines set forth in Ordinance No. 19005.  Thus, the City Counsel's Ordinances constitute a bill of attainder prohibited by the U.S. Constitution.

**Count 6: Section 6–344 Is Invalid Because It Conflicts with Section 6-340 of the City Code**

45.

Section 6-340(A)(1) provides that "unsafe buildings" may not be demolished unless certain notice requirements are met.[2]  Such notice must "require the owner within a stated time either to complete specified repairs or improvements, or to demolish and remove the building or structure or portion thereof."  And Hertz, as the owner, "shall have the right" to "appeal from the decision *of the public officer*" and to "appear before the board of adjustments and appeals at a specified time and place to show cause that he should not be required to comply with said notice."  City

---

[2]  Hertz denies that the City Council's procedurally and substantively improper finding of blight indicates in any way that the HLCO tower is unsafe such that the City may attempt demolition.

Code § 6-340(3).  Only "once a structure has been condemned by the city council" and the City

has deposited funds may the City be issued "a building permit" for the condemned property's

removal or repair.  *Id.* at § 6-340(5).

46.

Here, no notice of condemnation has been issued, no decision regarding condemnation by

a public officer has been made, no finding of condemnation has been made by the City Council,

and no deposit has been made by the City.

47.

Thus, judgment should be rendered declaring that the City cannot condemn the Capital One

Tower, cannot collect on (non-existent) costs of demolition, and cannot obtain a lien for same.

**Count 7: Hertz is Entitled to Declaratory Relief And the City is Liable For Damages and
Attorney's Fees Pursuant to 42 U.S.C.A §§ 1983, 1988.**

48.

42 U.S.C. § 1983 is a proper vehicle through which to bring a declaratory judgment action.

*See* 42 U.S.C. § 1983 (providing that a person who meets § 1983's elements "shall be liable . . . in

an action at law, suit in equity, or other proper proceeding for redress"); *City of Monterey v. Del

Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 751 (1999) (Souter, J., concurring) ("[R]ights

passing through the § 1983 prism may in proper cases be vindicated . . . by declaratory

judgments.").  The City is a "person" subject to suit within the meaning of § 1983.  *Monell v. N.Y.

City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978).  To establish municipal liability under § 1983,

a plaintiff must prove three elements: (1) an official policy or custom, of which (2) a policymaker

can be charged with actual or constructive knowledge, and (3) a constitutional violation whose

moving force is that policy or custom.  *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

49.

The Ordinances at issue constitute "official policies or customs."  *Prince v. Curry*, 423 Fed.Appx. 447, 450 (5th Cir. 2011).  Hertz is entitled to declaratory relief under § 1983 because the ordinances promulgated by the City were enacted by the City Council and violate its due process rights.

50.

Hertz is entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

51.

WHEREFORE, Hertz respectfully prays and requests that, after due proceedings are had, there be judgment rendered in favor of Hertz and against the City:

1) declaring Sections 6-344 and/or 12.5-9(d)(8)&(e) of the City Code and/or Ordinance Nos. 19005, 19006, and/or 19249 unconstitutional and/or invalid;

2) declaring the City Council's finding/declaration of "blight" against the Capital One Tower unconstitutional and/or invalid;

3) declaring that the City cannot condemn the Capital One Tower and cannot collect on (non-existent) costs of demolition based on the City Council's declaration of "blight" in Ordinance No. 19249;

4) declaring that the City does not have a privilege or lien against the Capital One Tower and/or any proceeds of the Policy;

5) awarding to Hertz attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

6) for all other relief as the nature of this case and the law permit.

Respectfully submitted:

*/s/ James M. Garner* _____
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446
AMANDA R. SCHENCK, #30706
BRANDON W. KEAY, #36528
STEPHANIE T. WARTELLE, #40095
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
Email: jgarner@shergarner.com
        mcurtis@shergarner.com
        aschenck@shergarner.com
        bkeay@shergarner.com
        swartelle@shergarner.com


WINFIELD E. LITTLE, JR., #08630
**LITTLE LAW FIRM**
616 Broad Street
Lake Charles, Louisiana 70601
Telephone: (337) 430-0907
Facsimile:  (337) 430-0120
Email: wlittle@littlelawfirm.com

-and-

EZRA PETTIS, JR. #36332
THE PETTIS LAW FIRM, L.L.C.
626 Broad St.
Lake Charles, Louisiana 70601
Telephone: (337) 439-3939
Facsimile:  (337) 439-4504
Email: ezra@delphinlaw.com

**ATTORNEYS FOR HERTZ INVESTMENT
GROUP, LLC & HERTZ LAKE CHARLES
ONE, LLC**